Helen WILSON, Appellant,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Appellee.

No. 04–CV–1113.

District of Columbia Court of Appeals.

Argued Oct. 17, 2006.

Decided Dec. 21, 2006.

 

$70,000.00. WMATA moved for entry of Judgment as a Matter of Law after Ms. Wilson's case-in-chief, and renewed its motion after the defense rested. Both motions were denied without prejudice. After trial WMATA renewed its Rule 50(b) Motion for Judgment as a Matter of Law, arguing that there was insufficient evidence for the jury to find that either WMATA or its' employee caused the alleged hazard or that they had knowledge of any alleged hazard. The trial court granted WMATA's motion for Judgment as a Matter of Law and Ms. Wilson filed a timely appeal. Concluding that there was insufficient evidence to establish that appellant's fall was caused by an orange substance allegedly on the steps of the bus, we affirm.

Donald M. Temple, Washington, DC, for appellant.

Fredric H. Schuster, for appellee.

Before WASHINGTON, Chief Judge, and REID and BLACKBURNE–RIGSBY, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

At issue in this case is whether the trial judge correctly granted appellee Washington Metropolitan Area Transit Authority's (WMATA) Motion for Judgment as a Matter of Law, overturning a $70,000.00 jury verdict in appellant Helen Wilson's (Ms. Wilson) favor. Appellant filed a complaint against WMATA alleging that while exiting a WMATA bus through the back door she slipped and fell on the steps of the bus and suffered injuries. After the fall, appellant alleged that there was a sticky orange substance, which she believed to be orange soda on her hand. Following a jury trial on June 7–8, 2004, the jury entered a verdict awarding Ms. Wilson

## I. FACTUAL BACKGROUND

Ms. Wilson testified at trial that on Saturday, October 14, 2004, she boarded the U8 WMATA bus with her niece. She described the condition of the bus when she boarded as "filthy ... dirty [and] nasty." Ms. Wilson testified that she and her niece were on the bus for approximately thirty minutes before they arrived at their stop at Dix Street and Eastern Avenue, S.E. Appellant and her niece exited through the rear door of the bus, Ms. Wilson's niece exited the bus first. Ms. Wilson stated that, "[a]fter I came down the second step and twisted my ankle and slipped and ... my feet ... went under me and I just landed this way and that way when I fell out the door ... [the bus driver] opened the back door and I just fell out." Ms. Wilson testified that she did *not* attempt to break her fall with her hands, and after she landed on the ground she saw an orange substance on her hand. She described the substance as dry and sticky and stated that it smelled like orange soda. Appellant testified that while she was exiting the bus she was looking straight ahead

and did not look down because she was focused on her niece who was in front of her. She did not see the orange soda on the steps before, during, or after her fall.

Ms. Lewis, the WMATA bus operator that day, testified that she picked the bus up on the street at Minnesota Avenue, S.E. and started her route at around 4:00 p.m. Ms. Lewis did not see Ms. Wilson fall but heard her scream. Immediately after the fall, Ms. Lewis got off the bus to investigate and asked Ms. Wilson if she was alright. In response, Ms. Wilson stated that she slipped off the last step of the bus. Ms. Lewis observed the rear steps of the bus after the accident but she did not see an orange sticky substance, or anything else on the rear steps of the bus.

Further, Ms. Lewis testified that she did not inspect the bus when she picked it up, she was aware that passengers often ate and drank on the bus, and that it was common for the bus to become cluttered with trash and debris throughout the day. She testified that throughout the course of the day at the end of each line, all bus drivers were required to inspect the bus. Ms. Lewis testified that she did not conduct an end of the line inspection prior to the incident because she was running behind schedule.

## II. TRIAL COURT'S RULING

In reviewing WMATA's Motion for Judgment as a Matter of Law pursuant to Superior Court Civil R. 50(b), the trial court gave favorable inferences to plaintiff's testimony at trial. However, the trial court found that Ms. Wilson failed to establish by a preponderance of the evidence that she slipped on any foreign substance while alighting from the bus. In reaching this conclusion, the trial court noted that Ms. Wilson never looked at the steps or saw any substance before, during, or after her fall, and that she testified that even if

she had looked down while alighting, she would not have seen the spot. The trial court reasoned that there was no evidence that there was orange soda on the steps that caused Ms. Wilson's slip and fall and that the orange soda could have come from the ground on to which Ms. Wilson fell, from a step other than the one on which she slipped or even from a different part of the same step. Thus, the trial court found that the evidence at trial only established that Ms. Wilson had orange soda on her hand after the fall. Finally, the trial court concluded that the evidence at trial failed to establish that WMATA had notice that orange soda might have been on the steps.

## III. STANDARD OF REVIEW

▉ Judgment as a matter law may be properly granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party" on an issue. Super. Ct. Civ. R. 50(a)(1); *Abebe v. Benitez*, 667 A.2d 834, 836 (D.C.1995); *Faniel v. Chesapeake & Potomac Tel. Co. of Maryland*, 404 A.2d 147, 150 (D.C.1979). This court considers *de novo* whether the evidence was sufficient to go to the jury. *WMATA v. Jeanty*, 718 A.2d 172, 174 (D.C.1998). The record must be viewed in the light most favorable to the non-moving party, who is entitled to the "benefit of every reasonable inference from the evidence." *Jeanty, supra*, 718 A.2d at 174; *Phillips v. District of Columbia*, 714 A.2d 768, 772 (D.C.1998). "[I]t is the responsibility of the jury (and not the judge) to weigh the evidence and to pass upon the credibility of witnesses. If impartial triers of fact could reasonably find the plaintiff's evidence sufficient, the case may not be taken from the jury." *Doe v. Medlantic Health Care Group, Inc.*, 814 A.2d 939, 946 (D.C.2003). Therefore, the question for this court is whether a reasonable juror could have properly reached a verdict in favor of Ms. Wilson. *Abebe, supra*, 667

A.2d at 836; *Faniel, supra*, 404 A.2d at 150; *Baker v. D.C. Transit Sys., Inc.*, 248 A.2d 829, 831 (D.C.1969).

## IV. ANALYSIS

### A. CAUSATION

■ The plaintiff in a negligence case has the burden of proving a causal relationship between the deviation in the standard of care and her injury. *Jeanty, supra*, 718 A.2d at 174; *Twyman v. Johnson*, 655 A.2d 850, 853 (D.C.1995). Therefore, Ms. Wilson was required to present evidence sufficient to persuade a reasonable jury by a preponderance of the evidence that WMATA's breach of a duty had a substantial and direct causal link to her injury. *Twyman, supra*, 655 A.2d at 852. Appellant argues that her trial testimony was sufficient for the jury to find causation. In support of that argument, Ms. Wilson notes that it is reasonable to infer from the jury's verdict in her favor that the jury credited her testimony and concluded the following: (1) she slipped on the bus while exiting; (2) something caused her to slip other than her own negligence; (3) she encountered an orange substance in the process of her fall; and (4) the substance was eventually on her hand. Appellant further contends that the trial court inappropriately discredited her testimony. *See Drevenak v. Abendschein*, 773 A.2d 396, 417 (D.C.2001) ("In determining whether there is sufficient evidence to support a jury verdict the court should ... assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party").

■ To the contrary, WMATA argues that Ms. Wilson failed to establish causation. Ms. Lewis, the bus operator, testified that when she inspected the steps after the fall she did not see any trash or anything wet or slippery on the steps. Appellee further argues that the orange soda on Ms. Wilson's hand could have come from a variety of places (this was also noted by the trial judge). Additionally, there was no testimony that Ms. Wilson's hand came in contact with the steps. She admitted that if she looked at the steps she would not have been able to see the substance and no witness corroborated that there was an orange substance on the bus steps. Therefore, appellee contends that Ms. Wilson failed, as a matter of law, to prove WMATA's negligence.

In *D.C. Transit Sys., Inc. v. Smith*, 173 A.2d 216, 217 (D.C.1961), appellee sued the transit company alleging that she was injured when she slipped on the steps of the bus while exiting. The court found causation debatable where "the only witness who saw the spot said there were no slide or scuff marks on it and when appellee examined her shoes after the fall she found no grease or oil on them." *Smith, supra*, 173 A.2d at 217 (reversing directed verdict in favor of appellee passenger). Additionally, in *Twyman*, the court affirmed a directed verdict in favor of the defendant on plaintiff's claims of negligence where appellant alleged that she fell while carrying trash down the rear steps of her apartment but she did not know what caused her to fall. 655 A.2d at 851. Despite the fact that expert testimony by an engineer was introduced, which established that the steps were unsafe and violated housing codes, the court affirmed the directed verdict because no testimony was given which tied her fall to the defective condition of the stairs "other than her bare statement that she set her foot down on the second or third step and fell." *Twyman, supra*, 655 A.2d at 851–53.

■ Here, as in *Twyman*, there is only the bare statement of appellant that she slipped and fell, and noticed dry sticky soda on her hand after the fall. Drawing all inferences in favor of Ms. Wilson, no

reasonable juror could have found for her on the issue of causation. Ms. Wilson testified that there was an orange substance on her hand after the fall. "Normally the existence of proximate cause is a question of fact for the jury." *Twyman, supra,* 655 A.2d at 853. However, in the instant case, the evidence does not support the jury's verdict. Given the absence of facts giving rise to proximate causation for Ms. Wilson's fall, the jury was left to speculate as to causation and draw impermissible inferences where there was no evidence that orange soda is what she slipped on or that it was even on the steps. *Marinopoliski v. Irish,* 445 A.2d 339, 341 (D.C. 1982) ("juries cannot be permitted to engage in idle speculation"). Under the facts of this case, the trial judge did not err in concluding that no reasonable juror could find in favor of Ms. Wilson on the issue of causation. *See, e.g., Burke v. Md. Auto Ins. Fund,* 879 A.2d 996 (D.C.2005); *Faniel, supra,* 404 A.2d at 147; *Baker, supra,* 248 A.2d at 829 (all affirming the trial judge's decision to overturn the jury's verdict and grant judgment as a matter of law).

### B. Constructive Notice

■ Having concluded that there was insufficient evidence to establish causation based on the evidence at trial, we need not discuss constructive notice at great length. The trial court found that the appellant failed to establish how long the alleged orange soda was on the steps. This was critical to establishing whether the bus driver knew or should have known about the potential hazard posed by orange soda that was allegedly on the steps. In order to prove constructive notice a plaintiff must present evidence that a dangerous condition existed for such a duration of time that had reasonable care been exercised the hazard would have been discovered. *Lynn v. District of Columbia,* 734 A.2d

168, 171–72 (D.C.1999) (reversing the trial court's grant of summary judgment because a genuine issue of fact regarding constructive notice existed); *Marinopoliski, supra,* 445 A.2d at 341 (affirming directed verdict because there was no basis for the jury to reasonably conclude that the hazard created was foreseeable). In determining whether notice is sufficient to rise to the level of constructive notice, each case "must be determined by its peculiar circumstances." *Lynn, supra,* 734 A.2d at 170.

■ Appellant did not present any evidence with respect to the duration of time the alleged hazard existed. Although each case has its own peculiar circumstances, the duration of the alleged hazard is an important factor in establishing constructive notice. *See, e.g., Hines v. Safeway Stores, Inc.,* 379 A.2d 1174,1175 (D.C. 1978) ("[c]onstructive notice is but a shorthand way of saying that shopkeepers are under a duty to police their premises with *enough frequency* to prevent the existence of dangerous conditions for *unreasonably prolonged periods*") (emphasis added); *Anderson v. Woodward & Lothrop,* 244 A.2d 918 (D.C.1968) (the condition must have "existed for such a *length of time* that, in the exercise of reasonable care, its existence should have become known and corrected.") (emphasis added); *Smith v. Safeway Stores Inc.,* 298 A.2d 214, 217 (D.C.1972) (finding no constructive notice where plaintiff only proved "mere presence on the floor of a single piece of debris for an *undetermined period* which might indicate neither that the grocer caused it to be there nor that he knew or should have known that it was there.") (emphasis added). The only evidence presented by appellant with respect to the duration of the hazard is that she was on the bus for thirty minutes before she and her niece exited and that the soda was dry and

sticky. However, neither of these factors serve to determine how long the alleged hazard existed. There was no testimony or evidence presented at trial about how long it takes soda to dry on the steps of a bus.

Appellant's reliance on *Jeanty* to support the contention that WMATA had constructive notice of a potential hazard on the rear steps of the bus is misplaced for several reasons. *Jeanty* did not abrogate the requirement that the duration of time a hazard exists is an important element to a constructive notice claim. In *Jeanty*, WMATA's failure to inspect as mandated by its own policies served as proof of the duration of time the hazard existed. *Jeanty, supra,* 718 A.2d at 174, 178 (four biweekly inspections missed). Therefore the hazard in *Jeanty* existed for such a time that had WMATA exercised reasonable care it would have discovered it. *Jeanty, supra,* 718 A.2d at 178. In the instant case, appellant failed to present any evidence that the alleged orange soda was on the steps at all, nor the duration of time that the orange soda might have been there. Accordingly, there was no basis for the jury to conclude that WMATA should have known of its existence, even if the driver had conducted an inspection of the bus.

*Jeanty* is further distinguishable from this case because in *Jeanty*, WMATA failed to conduct four consecutive biweekly inspections that were required by its own maintenance schedule. 718 A.2d at 174. In this case there was only one missed cleaning. Moreover, in *Jeanty* the plaintiff introduced expert testimony that the bus door, which caused appellee's injury, did malfunction. 718 A.2d at 178. Ms. Wilson presented no expert testimony, or any testimony for that matter, with respect to the presence of the orange sticky substance *on* the steps. Additionally, in *Jeanty,* the plaintiff presented evidence that proved what the preventative maintenance schedule was along with maintenance records, which established that WMATA failed to conduct the necessary inspection. 718 A.2d at 173–74. The only evidence presented in this case regarding a bus drivers' duty to inspect and clean the bus at the end of each line, was the testimony of the bus driver Ms. Lewis.[1] Ms. Wilson did not offer a WMATA manual or any other evidence to establish what WMATA's policy was with respect to inspections. Therefore, no factors which prove constructive notice were established by appellant and the proposition from *Jeanty,* that failure to inspect can show constructive notice, is inapplicable to this case.

*Affirmed.*

---

1. Ms. Lewis and Ms. Wilson's trial counsel engaged in the following colloquy:

Q. And in the course of a day how often do you inspect a bus?
A. At the end of the line and before you take it out of the garage.
Q. So the bus is driven all day long and there's no attempt to inspect the bus as it related to making sure the conditions are safe for passengers?
Q. At the end of the line everybody checks the bus, at the end of the line, at the end of the line, the end of the route. Once it comes to the destination point we all make an inspection of the bus.
· · ·
Q. The judge just asked you at each, at what point would you do the cleaning.
A. Yes.
Q. And you responded to the judge and just to be consistent with what you had already indicated is it because you were running behind that day that's why you didn't have the opportunity to do the cleaning that you were required to do?
A. Yes.