**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Appellant/Cross–Appellee,

v.

**Patricia M. BARKSDALE–SHOWELL,**
Appellee/Cross–Appellant.

**Nos. 06–CV–1106, 06–CV–1178.**

District of Columbia Court of Appeals.

Argued June 27, 2008.

Decided Feb. 19, 2009.

---

**25.** *Dickson v. District of Columbia,* 938 A.2d 688, 689 (D.C.2007).

**26.** *Duggan, supra,* 884 A.2d at 665.

Bruce Heppen, with whom Carol O'Keeffe, Mark Sullivan, and Gerard Stief were on the brief, for appellant/cross-appellee.

Jack Gold, with whom Lawrence Lapidus, and Douglas Sparks were on the brief, for appellee/cross-appellant.

Before WASHINGTON, Chief Judge, BLACKBURNE–RIGSBY, Associate Judge, and TERRY, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

A jury awarded Patricia Barksdale–Showell damages for injuries she suffered as a

result of her fall down an escalator at Washington Metropolitan Area Transit Authority ("WMATA")'s Anacostia station, under the theory that WMATA was negligent in failing to warn of the dangerous wet condition on the escalator. On appeal, WMATA contends that the trial court erred in denying its post-trial Motion for Judgment as a Matter of Law because Ms. Barksdale–Showell had failed to establish a *prima facie* case of negligence. In her cross-appeal, Ms. Barksdale–Showell contends that WMATA waived its argument that she failed to establish a *prima facie* case of negligence; she further contends that the trial court erred in finding that WMATA was immune from suit on a theory of negligent maintenance. WMATA also contends that the trial court abused its discretion in extending the time limit for Ms. Barksdale–Showell to file her cross-appeal.

We affirm the trial court's finding that WMATA was immune from suit under a theory of negligent maintenance and operation, and we affirm its finding that WMATA was subject to suit under a theory of negligent failure to warn. Additionally, we affirm the trial court's denial of WMATA's post-trial Motion for Judgment as a Matter of Law because Ms. Barksdale–Showell established a prima facie case on the claim of negligent failure to warn. The issue of the reasonableness of WMATA's conduct was one for the jury, and sufficient evidence was adduced at trial for a reasonable juror to find for Ms. Barksdale–Showell. We discuss each issue in turn.

## I. Factual and Procedural Background

On the morning of December 20, 2000, appellee/cross-appellant Patricia Barksdale–Showell noticed that it was "cold," and that there was snow still on the ground, which made it "slushy." She took the bus to the Anacostia Metrorail station, operated by appellant/cross-appellant WMATA, and walked across a "slushy and wet" path in order to enter the station. There were no safety cones, gates, signs, announcements or WMATA personnel warning of the wet conditions in the station. After paying her fare, Ms. Barksdale–Showell boarded the escalator headed down to the train platform. She initially stood on the right side and rode the escalator down. Then, Ms. Barksdale–Showell decided she wanted to walk down the escalator instead so she moved to the left side of the escalator. She took her first step, slipped, and fell to the bottom of the escalator. Another passenger activated the emergency stop button on the escalator when she heard Ms. Barksdale–Showell screaming. WMATA's police officers and an emergency team came to her aid and transported her to the hospital. Ms. Barksdale–Showell fractured her left leg, which required two subsequent surgeries to implant and maintain rod, pins, and screws in her leg to stabilize it.

On December 19, 2003, Ms. Barksdale–Showell filed her Complaint alleging that WMATA was negligent under two theories: (1) failure to inspect, maintain, and repair the wet conditions in the station; and (2) failure to warn of the wet conditions in the station. On February 18, 2005, the Honorable John M. Campbell granted WMATA's motion to strike testimony from Ms. Barksdale–Showell's expert regarding escalator maintenance. WMATA filed a motion in limine seeking to exclude expert testimony and other evidence on WMATA's alleged failures to inspect, maintain, and repair and warn of the wet conditions in the station. On November 29, 2005, on the eve of the scheduled trial date, Judge Campbell denied WMATA's motion in limine. That same day, WMATA filed a partial Motion to Dismiss based upon WMATA's purported immuni-

ty under Section 80 of the WMATA Compact. Hearings were held on the jurisdictional issue on December 12 and 19, 2005. At the conclusion of the hearing on December 19, 2005, Judge Campbell issued a bench opinion granting WMATA's partial Motion to Dismiss due to lack of subject matter jurisdiction for the negligent inspection, maintenance, and repair claim. In two orders issued on February 24, 2006, Judge Campbell confirmed that the negligent warning claim that had not been included in the partial motion to dismiss would proceed to trial, but Ms. Barksdale–Showell was precluded from presenting her expert at trial due to the earlier motion in limine because a failure to warn did not require expert testimony.

The trial was presided over by the Honorable Robert E. Morin beginning on April 24, 2006, and ended when the jury returned its verdict in favor of Ms. Barksdale–Showell and its award of $45,000 on April 25, 2006. Judge Morin denied WMATA's renewed Motion for a Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial on August 2, 2006. WMATA filed its Notice of Appeal on August 31, 2006. Ms. Barksdale–Showell filed her Notice of Cross–Appeal on September 15, 2006, and her Conditional Motion to Extend Time for Noting Cross–Appeal on September 29, 2006. On November 15, 2006, Judge Morin granted the Conditional Motion to Extend Time for Noting Cross–Appeal.

## II. Analysis

### A. Sovereign Immunity

▆▆▆ WMATA was created when Congress approved the Washington Metropolitan Area Transit Authority Compact ("Compact") that was signed by Maryland, Virginia, and the District of Columbia. See Pub.L. No. 89–774, 80 Stat. 1324 (1966) (codified as amended at D.C.Code § 9–1107.01 et seq. (2001)). The Compact confers upon the Transit Authority the sovereign immunity enjoyed by the signatories. Beebe v. Washington Metro. Area Transit Auth., 129 F.3d 1283, 1287 (D.C.Cir.1997). That sovereign immunity has been waived for "torts . . . committed in the conduct of any proprietary function," but preserved for "torts occurring in the performance of a governmental function." D.C.Code § 9–1107.01(80). Federal courts [1] and this court interpreting the sovereign immunity provision of the WMATA Compact have applied a two-part test to determine whether an activity enjoys its protection. First, the test asks whether a particular activity is governmental or proprietary. Activity found to be "quintessentially governmental" falls directly within the scope of WMATA's sovereign immunity. See McKethean v. Washington Metro. Area Transit Auth., 588 A.2d 708, 713 (D.C. 1991) (adopting the two-part test used in federal circuit courts based upon the Federal Tort Claims Act for claims brought under Section 80 of the WMATA Compact); Dant v. District of Columbia, 829 F.2d 69, 74 (D.C.Cir.1987) (holding that operation of police force is "quintessentially governmental"). The second part of the test addresses activities that are not quintessential governmental functions, where immunity depends on whether the activity is considered discretionary or ministerial. Dant, 829 F.2d at 74. Only discretionary activity is shielded by sovereign immunity.[2] Id. at 75. Discretionary functions are

---

**1.** We have reaffirmed the applicability of federal case law that applies the Federal Tort Claims Act's two-part test enunciated in the United States Supreme Court's case in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct.

1954, 100 L.Ed.2d 531 (1988), in Robinson v. Washington Metro. Transit Auth., 676 A.2d 471, 474 (D.C.1996).

**2.** The doctrine of sovereign immunity was created to provide protection for persons re-

governmental actions and decisions that are "based upon considerations of public policy" and require "an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). If any " 'statute, regulation, or policy specifically prescribes a course of action' " for WMATA to follow, then no discretion is involved because WMATA had "no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In the absence of a prescribed code of conduct, however, WMATA's decisions are discretionary if they involve "political, social, [or] economic" choices. *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C.Cir.1997). A proprietary activity enjoys the protections of sovereign immunity only if it is a discretionary function. *Id.* at 1217.

In her Complaint, Ms. Barksdale–Showell makes two allegations regarding WMATA's conduct. She argues first that WMATA failed to maintain, repair, inspect, or operate the escalators at the Anacostia station such that they became wet and icy, and second, that WMATA failed to warn the public of the wet and icy escalators.[3] We review the trial court's determinations regarding sovereign immunity *de novo*. *Aguehounde v. District of Columbia*, 666 A.2d 443, 447 (D.C.1995). Because WMATA concedes that its actions were not "quintessentially governmental activities," we focus our analysis on the issues of whether its functions were discretionary and, if so, whether they were grounded in economic, social, or political policy to immunize it from liability.[4]

quired to balance practical economic considerations when setting priorities for the accomplishment of legislative and policy objectives. *See United States v. Varig Airlines*, 467 U.S. 797, 820, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Thus, sovereign immunity only provides protection for quintessentially governmental or discretionary actions.

3. WMATA contends that the trial court abused its discretion by granting Ms. Barksdale–Showell's motion to extend the time limit for her cross-appeal because her counsel's miscalculation of the time does not constitute "good cause" or "excusable neglect." First, we note that insofar as Ms. Barksdale–Showell's cross-appeal responds to WMATA's defense of sovereign immunity raised before the trial court and this court, which implicates both the trial court and this court's subject matter jurisdiction, Ms. Barksdale–Showell's arguments may be raised at any time including for the first time on appeal. *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 32, 39, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (holding that sovereign immunity barred claim against the government even though the issue was raised for the first time on appeal).

Even assuming *arguendo*, that we accept WMATA's argument that Ms. Barksdale–Showell's remaining two arguments (that WMATA waived its right to judgment as a matter of law and that she presented a prima facie case of negligence) should not be considered as part of her cross-appeal, we note that the issue of plaintiff-appellee's prima facie case was raised before the trial court and they could be considered as appellee's responses to WMATA's opening brief on appeal, which raises those identical issues. *See Jackson v. Loews Washington Cinemas*, 944 A.2d 1088, 1091 (D.C.2008) (affirming trial court's judgment on the merits on other grounds on appeal); *Transcon. Ins. Co. v. W.G. Samuels Co.*, 370 F.3d 755, 758 (8th Cir.2004) (holding that because the appellate court could affirm a judgment on any ground raised in the trial court, the prevailing party on an issue need not file a cross-appeal to raise alternative grounds for affirmance). As discussed *infra*, we reach the merits of the negligence claim and affirm the trial court's denial of WMATA's Motion for Judgment as a Matter of Law on other grounds.

4. WMATA did not raise a sovereign immunity defense to the negligent warning claim before the trial court nor does it do so now on appeal. Because a valid claim of sovereign immunity would deprive this court of subject matter jurisdiction, we must address it. As discussed in greater detail *infra*, the Severe Weather Plan and SSOPs (Standard Operat-

### B. Negligent maintenance, repair, inspection, and operation

■ With respect to her allegation regarding the maintenance, repair, inspection, and operation of the escalators, Ms. Barksdale–Showell relies upon WMATA's Severe Weather Plan Alert that was issued the evening prior to her accident. This Alert required custodians to arrive at their respective Metrorail stations by 5:00 a.m. on December 20, 2000, the day of her accident. She also relies upon WMATA's SSOPs, which directed station managers to ensure that hazardous areas were not accessible to passengers, and to frequently inspect station interiors for unsafe conditions which "MUST be rendered safe IMMEDIATELY by correcting the fault *if possible,* · or by keeping ... passengers away from the affected area."

Even assuming, *arguendo,* that WMATA's custodian at the Anacostia station violated this mandatory portion of the Alert by not arriving by the appointed time[5], we note that there was nothing in the Alert or the relevant SSOPs that man-dated certain actions to be taken. The fact that the internal operating procedure about the requirement of rendering a hazard safe contains an element of discretion ("if possible"), which undermines any claim by Ms. Barksdale–Showell that WMATA employees were bound to follow a specific directive. A fair reading of the procedure contemplates that upon encountering a hazard, the employee is vested with a decision of whether the hazard can be rendered safe, how it may be rendered safe, and whether the employee will actually render it safe. *See Robinson, supra* note 1, 676 A.2d at 473–75 (holding that use of mandatory and permissive language in WMATA SSOPs did not require station manager to take a specific course of action so decision was discretionary); *Gaubert, supra,* 499 U.S. at 324, 111 S.Ct. 1267 ("[I]f a regulation allows the employee discretion, the existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which lead to the promulgation of the reg-

ing Procedure) gave WMATA discretion to use the station public address system "when appropriate" and did not mandate how its employees were to "keep[ ] personnel and passengers away from the affected area" when a hazard could not be rendered safe. Given that WMATA did not provide a policy rationale for its decision not to warn at trial, in its brief on appeal, and declined to provide one at oral argument on June 27, 2008, WMATA's lack of a policy underlying its decision not to warn is certainly not the kind of "social, economic, or political" decision that Congress intended to immunize from suit. *See Oberson v. United States Dep't of Agric.,* 514 F.3d 989, 998 (9th Cir.2008) (holding that Forest Service was subject to liability in the absence of any evidence that its failure to post a warning on a trail where prior accidents had occurred was a policy choice that would be immunized); *Cope v. Scott,* 45 F.3d 445, 450–52 (D.C.Cir.1995) (holding that National Park Service's decision not to post warning sign on a commuter road was not immunized because

it did not implicate the Service's policy of maintaining aesthetics); *Seyler v. United States,* 832 F.2d 120, 123 (9th Cir.1987) (doubting "that any decision not to provide adequate [warning] signs would be 'of the nature and quality that Congress intended to shield from tort liability' "). Therefore, WMATA does not enjoy sovereign immunity on the negligent warning claim, which was properly before the trial court and is before this Court.

5. The parties dispute whether the WMATA custodian who was deposed was the custodian assigned to the Anacostia station on December 20, 2003. It is unclear, therefore, whether a custodian arrived at 5:00 a.m. What is clear, though, is that even if a custodian violated the requirement to arrive at the appointed time, there were not specifically prescribed responsibilities that required WMATA's employees to act in a certain way such that the first step of the analysis would be satisfied.

ulations."). At the least, the procedure contemplates that there will be some hazards that cannot *possibly* be corrected. While there is a colorable argument that this SSOP requires WMATA to keep passengers away from the affected areas, the analysis under the second step forecloses this possible ground for liability.

We now turn to whether the discretion exercised over the maintenance, repair, inspection, and operation of the escalators is "subject to policy analysis" and thus discretionary. We must determine whether the trial court correctly determined that WMATA's responses to the wet conditions in the station "[were] of the kind that the [discretionary function exception] was designed to shield." *Gaubert, supra,* 499 U.S. at 323, 111 S.Ct. 1267. Paul Gillum, Jr., the head of the Office of Plant Maintenance at WMATA, explained that "WMATA's policy has been to allow the wet floors, wet platforms, and wet escalators to dry by evaporation" because "WMATA would be required to turn off its escalators to hand dry its escalator steps and that activity would interrupt the efficient movement of passengers through the Metrorail system, and inconvenience passengers desiring to use the escalators," which "would be particularly problematic and harmful during rush hour." He further explained that the decision not to mop or dry the tile floors was because it would be "costly and ineffective" in terms of requiring the deployment of additional employees to "continuously mop and dry in and around the feet of walking passengers," who "would continue to enter and deposit moisture at the time that WMATA was attempting to dry the floors, [rendering] the drying effort futile." WMATA thus concluded that

its "resources [we]re appropriately committed to clearing or treating snow and ice from exterior sidewalks and parking lots ... rather than to the hopeless tasks of drying floors, platforms, and escalators which are continuously in use and operation." These actions are consistent with WMATA's statutory purpose of operating "improved transit facilities ... as part of a balanced regional system of transportation" and mission of providing public transportation and its policy of "keep[ing] all stations, and all escalators in those stations, operating during inclement weather, if at all possible, in order to serve the public's need for mass transportation" balanced against its ability to fulfill that mandate in an efficient and effective manner. § 9–1107.01(2). Indeed, during the morning rush hours (5:30 to 7:00 a.m.) of Ms. Barksdale–Showell's accident, more than 2,500 passengers entered the Anacostia station.

This is precisely the sort of social, economic, and political policy-based judgment that this court and federal circuit courts confronting similar issues have held to be immunized from liability.[6] *See Smith v. Washington Metro. Area Transit Auth.,* 290 F.3d 201, 209 (4th Cir.2002) (holding that WMATA's decision to permit passengers to choose between walking on a stationary escalator or riding an elevator was one that implicated "potential economic and political costs ... in choosing between such unattractive resolutions of its problems" and "might well have resulted in public outrage, adverse media coverage, or political fallout"); *McKethean, supra,* 588 A.2d at 713–14 (holding that WMATA's decision not to relocate a bus stop involved

**6.** We recognize, as the United States Courts of Appeals for the Fourth and District of Columbia Circuits do, that "a proper consideration in construing the [WMATA] Compact is the maintenance of consistency between the

legal interpretations of the two federal circuits most likely to hear cases in which [WMATA] is a party." *Lizzi v. Alexander,* 255 F.3d 128, 134 (4th Cir.2001).

safety planning and weighing of various alternatives, in the absence of specific safety guidelines, which was immune from liability). The situation at the Anacostia station required WMATA "to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding," which this court should decline to "second-guess." *Varig Airlines, supra* note 2, 467 U.S. at 820, 104 S.Ct. 2755.

### C. Negligence: Failure to Warn

WMATA contends that the trial court erred by denying its Motion for Judgment as a Matter of Law because WMATA did not have a duty to warn, there was no dangerous condition that required a warning, and any failure to warn did not proximately cause Ms. Barksdale–Showell's injury, and thus, Ms. Barksdale–Showell failed to establish a prima facie case of negligence. Ms. Barksdale–Showell responds that because WMATA had superior knowledge of the unreasonably hazardous condition of the wet escalator, it had a duty to warn passengers, and sufficient evidence existed for the jury to find in her favor at trial.[7]

We review the trial court's denial of WMATA's Motion for Judgment as a Matter of Law *de novo. Washington Metro. Area Transit Auth. v. Jeanty,* 718 A.2d

172 (D.C.1998). Judgment as a matter of law may be granted only if, when viewing the evidence in the light most favorable to the non-moving party, there is "no legally sufficient evidentiary basis" for a reasonable jury to find for the non-moving party and there is "only one conclusion that can reasonably be drawn from the evidence." *Brown v. Nat'l Acad. Sci.,* 844 A.2d 1113, 1115 (D.C.2004) (citation omitted). The non-moving party is entitled to the benefit of every reasonable inference from the evidence, and we must be cognizant that "it is the responsibility of the jury (and not the judge) to weigh the evidence and to pass upon the credibility of the witnesses." *Homan v. Goyal,* 711 A.2d 812, 818 (D.C. 1998). Although the non-moving party is "entitled to the benefit of all logical inferences, the jury may not be allowed to engage in idle speculation." *District of Columbia v. Davis,* 386 A.2d 1195, 1201 (D.C.1978).

To prove a *prima facie* case of negligence, the plaintiff must prove that the defendant owed a duty, and the breach of that duty proximately caused the plaintiff's injuries. *Davis, supra,* 386 A.2d at 1200. In the District of Columbia, parties are charged with the duty to act with reasonable care under the circumstances. *McKethean, supra,* 588 A.2d at 712. Although there is no duty to warn when a danger is as well known to the plaintiff as

---

7. Ms. Barksdale–Showell also contends on appeal that WMATA's Motion for Judgment as a Matter of Law lacked specificity and thus failed to meet the requirements of Superior Court Rule of Civil Procedure 50. *See* D.C.Super. Ct. Civ. R. 50(a)(2). This argument is without merit. We have consistently held that technical precision is not required to preserve the issue of evidentiary sufficiency for appeal. *See Howard Univ. v. Best,* 547 A.2d 144, 148 (D.C.1988). Here, counsel for WMATA timely moved for judgment as a matter at the close of Ms. Barksdale–Showell's case and the trial court then took that motion

under advisement. After the case was submitted to the jury, counsel for WMATA elaborated on the prior motion. Finally, following the jury verdict, WMATA timely filed a written Motion for Judgment as a Matter of Law, which was denied. Moreover, because Ms. Barksdale–Showell did not object to the lack of specificity at trial, she has waived her objection. *See Whelan v. Abell,* 48 F.3d 1247, 1251 (D.C.Cir.1995) (holding that plaintiff failed to object to defendant's additional theory added to its post-verdict Rule 50 motion and thus plaintiff's objection was waived).

it is to the defendant, if a certain danger is peculiarly foreseeable to the defendant but not the plaintiff, there is a duty to warn. *See Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1383 (D.C.1979). Knowledge of a dangerous condition "implies not only that the condition is recognized, but also that the chance of harm and the gravity of the threatened harm are appreciated." Rest. (2d) of Torts § 342 cmt. a. (1965). Public utilities and government agencies "may have special reason to anticipate that one who enters [their facilities] will proceed to encounter known or obvious dangers." *Id.* § 343A. The Restatement explains that the term "known denotes not only knowledge of the existence of the condition ... but also appreciation of the danger it involves" and that "obvious" means that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* cmt. b. A public utility or government agency may have a duty to warn when there is "reason to expect that the invitee will proceed to encounter the known or obvious danger because to reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.* cmt. f.

▮ As a threshold matter, we agree with WMATA that Ms. Barksdale–Showell's testimony at trial along with other evidence demonstrated that she was or should have been aware of the open and obvious condition of the snow and ice on the ground and thus she should have—and did—exercise reasonable care in her journey from her home to the Anacostia Metrorail station. We disagree, however, with WMATA's contention that the condition of the escalators was open and obvious and known to Ms. Barksdale–Showell as it was to WMATA. Unlike WMATA, Ms. Barksdale–Showell was not aware of the prior slip and falls on that particular escalator or on other WMATA escalators. Her appreciation of the condition (the wet ground) was different than and distinct from her lack of appreciation of the unreasonably dangerous hazard risk that the condition posed on the escalator as opposed to other surfaces. *Cf. Jones v. Washington Metro. Area Transit Auth.*, 742 F.Supp. 24, 27 (D.D.C.1990) (finding that a reasonable person in plaintiff's position would appreciate the danger and thus exercise extra care when wearing one-quarter-inch-wide high heels on an escalator with wide slots).

This case is the converse of *Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1383 (D.C.1979), where this court held that the defendant store had no legal duty to warn the plaintiff of the physical attack she suffered because no such opportunity to warn existed prior to the attack, since the assailant's attack was spontaneous and there was no way defendant could have reasonably foreseen the criminal attack upon the plaintiff. The *Ellis* court noted that "there is nothing to suggest that appellees know of the isolated attack on appellant in advance." *Id.* Here, on the other hand, WMATA had considerably more advance notice of the hazardous condition (and, thus, an opportunity to warn), the record demonstrates that escalator slip-and-falls were reasonably foreseeable because they had happened before (thus they were not an isolated and unforeseeable event), and, most significantly, it had the time and opportunity to warn Ms. Barksdale–Showell.

▮ Because WMATA failed to warn Ms. Barksdale–Showell, we must next analyze whether sufficient evidence existed for a reasonable jury to find that the breach of the duty to warn proximately caused Ms. Barksdale–Showell's injuries. Here, the jury heard Ms. Barksdale–Showell's testi-

mony that there were no warnings of any kind and could reasonably infer that Ms. Barksdale–Showell, who had not encountered any problem during any other point in her walk from her home to the bus stop, exiting the bus, walking into the Metrorail station, and onto the escalator, was subjected to an unreasonably dangerous condition. Our holding in *Wilson v. Washington Metro. Area Transit Auth.*, 912 A.2d 1186, 1189–90 (D.C.2006), is distinguishable because in that case no reasonable juror could have found that the dry sticky orange soda residue on the plaintiff's hand, which she noticed *after* the fall, caused her to fall when there was no evidence that orange soda was what she slipped on or was even on the steps. *Id.* at 1190. Additionally, this court's more recent decision in *Mixon v. Washington Metro. Area Transit Auth.*, is also distinguishable because there the plaintiff was unable to produce any evidence as to the cause of his fall or WMATA's knowledge of any substance being present on the escalator. 959 A.2d 55, 59 (D.C.2008) (affirming because the "[a]ppellant simply has not shown, beyond his own speculation, that any act or omission by WMATA or its personnel had anything to do with his fall."). By contrast, Ms. Barksdale–Showell adduced evidence at trial—including WMATA's stipulation—that it was wet and slushy outside the station, that she used caution while walking, and that she fell only when she started to walk down the escalator.

Viewing the evidence in the light most favorable to Ms. Barksdale–Showell and drawing all inferences in her favor, a reasonable juror could find in her favor on causation. There was more than a scintilla of evidence upon which a reasonable jury could find in Ms. Barksdale–Showell's favor. The weight that should be accorded to the evidence and credibility determinations are for the jury, and we hold that the trial court properly denied WMATA's Mo-

tion for Judgment as a Matter of Law. *Cf. Twyman v. Johnson*, 655 A.2d 850, 851, 853 (D.C.1995) (holding that plaintiff's testimony did not tie her fall to a defective condition of the stairs, and her bare statement that she did not know what caused her to fall was insufficient for a reasonable jury to find that the conditions of the steps, as opposed to her lack of sure footing or some factor, caused her fall).

For the foregoing reasons, we affirm the decision of the trial court.

*So ordered.*