# District of Columbia
# Court of Appeals



**No. 15-CV-711**

ATIYA K. REEVES,

Appellant,

v.

**CAB-810-14**

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges*; and REID, *Senior Judge*.

## JUDGMENT

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the orders of the trial court are vacated, and the case is remanded for further proceedings.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: April 14, 2016.

Opinion by Senior Judge Inez Smith Reid.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-711

ATIYA K. REEVES, APPELLANT,

FILED **4/14/16**
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

V.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-810-14)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Argued March 10, 2016                                    Decided April 14, 2016)

*Patrick G. Senftle*, with whom *John H. Schroth* was on the brief, for appellant.

*Michael K. Guss*, Associate General Counsel, WMATA, with whom *Gerard J. Stief*, Chief Counsel, Appeals & Special Litigation, and *Patricia B. Donkor*, Assistant General Counsel, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*:  In this personal injury, slip and fall case appellant, Atiya K. Reeves, appeals the trial court's order granting summary judgment and the court's order denying her motion for reconsideration.  She claims, in essence,

that the trial court erred by ruling in favor of appellee, Washington Metropolitan Area Transit Authority ("WMATA"), as a matter of law with respect to her claim of negligence. For the reasons stated below, we vacate the orders of the trial court and remand this case for further proceedings.

## FACTUAL SUMMARY

The record reveals that on February 24, 2011, at around 5:30 pm, Ms. Reeves slipped and fell on the floor just inside the pay gates at the Archives-Navy Memorial-Penn Quarter Metro station (the "Archives Metro station"). She filed a negligence complaint against WMATA on February 12, 2014, alleging, *inter alia*, that her "fall was the direct and proximate result of the unsafe and hazardous condition of the Metrorail station's floor tiles," and that WMATA's failure "to warn or advise [her] of the unsafe and hazardous condition" was the proximate cause of her fall and resulting injuries. Following discovery, WMATA filed a motion for summary judgment, arguing (1) "there is no evidence of an unreasonably dangerous condition," and (2) "no reasonable jury could find in favor of [Ms. Reeves] under a failure to warn theory."

Attached to WMATA's motion were excerpts from the deposition testimony

of Ms. Reeves' engineering expert, Dr. Gregory Harrison, excerpts from Ms. Reeves' deposition testimony, and a statement of undisputed facts. WMATA asserted that Dr. Harrison "rejected any claim that warning signs could have led to a different outcome here."[1] However, Dr. Harrison also testified that as floors age, they "lose their slip resistance characteristics." He explained that at a minimum, for a floor surface to provide adequate slip resistance for safety purposes, the coefficient of friction[2] of the floor surface should exceed .45. Dr. Harrison's expert opinion, derived from testing and his review of the record in this case, was that the coefficient of friction for the Archives Metro station floor surface around where Ms. Reeves fell was "well below .5" within "a number range of .3 to .35." In laymen's terms, he described the station floor's "dry condition [as] anything but slip resistant[,] and when wet it's treacherous."[3]

---

[1] Dr. Harrison was asked whether he had "an opinion about whether or not there should have been warning signs," and he replied: "Well, it's prevailing practice that when it's raining warning signs are put out to remind pedestrians. My professional opinion on that is that I call it similar to putting perfume over body odor. It doesn't mitigate. If you have slippery floors you have slippery floors."

[2] Roughly speaking, the coefficient of friction of a surface is a number that indicates how slippery that surface is. The smaller the coefficient of friction is for a given surface, the more slippery that surface is.

[3] Indeed, Dr. Harrison pointed out that the floors in Metro stations are generally "excessively worn and smooth to the point that they would not be slip resistant dry," and that the floors "would be viewed as non-slip resistant or slippery and then when wet they would be approximating a condition of ice . . . ." He

(continued…)

Ms. Reeves filed an opposition to WMATA's motion, as well as a motion for reconsideration after the trial court granted WMATA's motion for summary judgment. Attached to Ms. Reeves' opposition memorandum was a "statement of material facts for which there is a genuine issue," excerpts from her deposition, her affidavit, the affidavit of Dr. Harrison, and a television news report. She attached to her motion for reconsideration excerpts from her deposition, her supplemental affidavit, excerpts from the deposition testimony of WMATA's station manager at the time of the incident (Lawrence D. Walker), and WMATA's answers to her interrogatories.

During her deposition, Ms. Reeves testified that on the day of her fall, she took her umbrella with her to work because it was "[a] rainy day."[4] She

_____

(…continued)

mentioned that "six stations . . . have been modified" with new floor tiles, but in an affidavit attached to Ms. Reeves' opposition to WMATA's summary judgment motion, he clarified that the Archives Metro station was not one of the stations so modified.

[4] Ms. Reeves testified in her deposition that she did not remember whether it was raining in the morning when she went to work, nor did she "stare outside [her office] window during [her] workday . . . to see what the weather was like." However, in an affidavit she attached to her opposition memorandum, she stated, "By the time[] I arrived at work that morning it was raining and continued to rain throughout the day. When I left work at 5:30 p.m., it was still raining." WMATA does not dispute this fact; to the contrary, it states in its brief that "[i]t was raining the entire day."

remembered that when she left work and walked to the Archives Metro station at around 5:30 pm there was "a light rain" that required her and others around her to use their umbrellas. She took an elevator to get into the station, exiting at the mezzanine level. After getting out of the elevator, she walked towards the fare gates, and then swiped her "Smart Card" to go through. While walking, she was looking "[s]traight ahead" and she was not walking with anyone, listening to music, or using her phone in any other way. She did not see any caution signs in the station, nor did she notice whether the floor was wet or dry.[5] After she took a few steps in the paid area, she fell down.[6] It was only at that point that she "noticed traces of water." Ms. Reeves further declared in her affidavit that the "traces of water . . . formed trails or lines that looked like it had been tracked in on peoples' feet as they entered the Archives metro station from the outside." She "also noticed that [her] overcoat was significantly wet in the area of [her] buttocks" after her fall.

---

[5] She did note, however, in her supplemental affidavit attached to her motion for reconsideration that a "stream of commuters" surrounded her as she approached the fare gates, obstructing her view.

[6] She described her fall in the following exchange:

> Q: And how did you fall?
> A: When I fell -- so I was walking, then my right foot turned inwards towards my left leg, then I fell on my bottom, I heard a snap, and that's when I yelled[.]

The news report by the local NBC affiliate indicated that one of WMATA's board members (the then-current mayor of Alexandria, Bill Euille) fell at a metro station several months prior to Ms. Reeves' fall. The end of the report stated that "Metro has already looked at improving the tile floors at its 86 stations," and according to the report, Mr. Euille remarked that "it may be time to revisit the issue." In his affidavit Dr. Harrison opined, "to a reasonable degree of professional and engineering certainty," that since WMATA knew "that the quarry tiles on the floors of the station were slippery when wet, WMATA had a duty of reasonable care to properly warn or advise pedestrians of the unsafe and hazardous condition of the wet floor tiles," and that WMATA had breached that duty by failing to warn when it "peculiarly knew, or should have known, in the exercise o[f] reasonable care, that the floor tiles would be wet on February 24, 2011 when it had been raining all day and pedestrians would track water into the Archives [S]tation."

In granting WMATA's motion for summary judgment, the trial court cited *Washington Metro. Area Transit Auth. v. Barksdale-Showell*, 965 A.2d 16, 24-25 (D.C. 2009), and stated in part, "[T]his member of the court cannot conclude that the water tracked into a metro station by its patrons (including the plaintiff) on a rainy day during rush hour constitutes a hidden or otherwise discrete danger that

was well known to only the defendant, and not the plaintiff." The court repeated its above-mentioned sentence in denying Ms. Reeves' motion for reconsideration, but did not repeat the citation to *Barksdale-Showell*. The trial court also concluded that WMATA had no duty to warn because Ms. Reeves' "failure to appreciate her surroundings under the[] circumstances does not require Defendant WMATA to warn [Ms. Reeves] about an obvious risk." Ms. Reeves noticed an appeal.

## THE PARTIES' APPELLATE ARGUMENTS

In this appeal, Ms. Reeves argues that the trial court erred in granting summary judgment because there was evidence in the record indicating that the wet station floor posed a danger that was not "open and obvious" to Ms. Reeves, that the danger was not equally well known to both parties, that WMATA had constructive notice of the danger, and that WMATA's failure to warn was the proximate cause of her fall.[7] WMATA contends, by contrast, that the trial court correctly found that WMATA had no duty to warn Ms. Reeves of the wet station floor because the wet station floor was not a dangerous condition, and because in

---

[7] Ms. Reeves also devotes a portion of her brief to arguing that she was not contributorily negligent. It does not appear that the trial court relied on this ground in granting WMATA summary judgment, and WMATA does not explicitly rely on the contributory negligence doctrine in advocating affirmance of the trial court's order. As a result, we do not address this issue.

any event Ms. Reeves had knowledge equal to if not greater than WMATA's knowledge of the condition.

## ANALYSIS

### *Standard of Review and Legal Principles*

We review the trial court's grant of summary judgment *de novo*, applying the same standard as the trial court. *See Bruno v. Western Union Fin. Servs., Inc.*, 973 A.2d 713, 717 (D.C. 2009) (per curiam). We consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Super. Ct. Civ. R. 56 (c)). The moving party bears the burden of showing there is no genuine issue of material fact, and we resolve all doubts in favor of the non-moving party. *Id.* All inferences to be drawn from the undisputed facts are also drawn in favor of the non-moving party. *Id.* "[M]ere conclusory allegations by the non-moving party are legally insufficient to avoid the entry of summary judgment." *Little v. District of Columbia Water & Sewer Auth.*, 91 A.3d 1020, 1025 (D.C. 2014) (citation omitted).

"To prove a *prima facie* case of negligence, the plaintiff must prove that the defendant owed a duty, and that breach of that duty proximately caused the plaintiff's injuries." *Barksdale-Showell*, *supra*, 965 A.2d at 24 (citation omitted). "Questions of causation are ordinarily issues of fact for the jury." *Tolu v. Ayodeji*, 945 A.2d 596, 604 n.6 (D.C. 2008) (quoting *Thompson v. Shoe World, Inc.*, 569 A.2d 187, 190 (D.C. 1990)).

In premises liability cases involving invitees, "[a] shopkeeper has a duty to warn only when there is time to do so." *Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1383 (D.C. 1979). Moreover, "there is no duty to warn when a danger is as well known to the plaintiff as it is to the defendant, [but] if a certain danger is peculiarly foreseeable to the defendant but not the plaintiff, there is a duty to warn." *Barksdale-Showell*, *supra*, 965 A.2d at 24-25. Further, "[k]nowledge of a dangerous condition 'implies not only that the condition is recognized, but also that the chance of harm and the gravity of the threatened harm are appreciated.'" *Id.* at 25 (quoting Restatement (Second) of Torts § 342 cmt. a (Am. Law Inst. 1965)).

***Discussion***

In reaching its conclusion on the motions for summary judgment and

reconsideration, we believe that the trial court misconstrued part of our decision in *Barksdale-Showell* and may have overlooked some of the evidence attached to Ms. Reeves' opposition to the motion for summary judgment and to her motion for reconsideration. The trial court concluded that, based on the undisputed facts, WMATA had no duty to warn Ms. Reeves about the "obvious risk" posed by the wet floor in the Archives Metro station and was thus entitled to judgment as a matter of law on Ms. Reeves' negligence claim. In denying Ms. Reeves' motion for reconsideration, the trial court also declared that "the mere fact that some water is deposited on the floor of . . . WMATA's station tracked-in by patrons or their clothing or umbrellas during a rainstorm, without more, does not create a dangerous condition" and further stated that even if tracked-in water on the station floor created a dangerous condition, Ms. Reeves failed to show that WMATA was on constructive notice of the condition because she "failed to present any evidence regarding 1) how long this particular dangerous condition near . . . WMATA's fare gates existed or 2) if [WMATA] through its agents was placed on notice of this condition before [Ms. Reeves] slipped and fell."

Whether WMATA had a duty to warn Ms. Reeves in this case turns on (1) whether a wet metro station floor constitutes a dangerous condition, (2) whether the danger faced by Ms. Reeves in traversing the wet floor was equally well known

to both parties or instead was "peculiarly foreseeable" only to WMATA, and (3) whether WMATA had sufficient notice of the condition so as to give it an opportunity to warn Ms. Reeves. The second question is significant in this case.

First, we conclude that the trial court erred in declaring that a station floor of wet and slippery tiles is not a dangerous condition. *See Harris v. H.G. Smithy Co., Inc.*, 429 F.2d 744, 745 (D.C. Cir. 1970) ("[E]vidence of a substantial period of rain is sufficient to give a landlord constructive notice of the foreseeable hazards that may result from that rain, including the risk that water will be tracked into an apartment lobby and the floor will become slippery") (citation omitted). Dr. Harrison's affidavit and his deposition testimony that metro station floors in general are "excessively worn and smooth" to the point that they can be as slippery as ice when wet, combined with his specific testimony that the Archives Metro station floor lacked slip resistance even when dry and became "treacherous" when wet reveals evidence sufficient to present a question of fact, and hence, a jury question.

Second, we conclude that the danger faced by Ms. Reeves in traversing the wet floor was not equally well known to both parties and instead was peculiarly foreseeable only to WMATA. Our decision in *Barksdale-Showell* distinguishes

between the question as to whether Ms. Barksdale-Showell should have been "aware of the open and obvious condition of the snow and ice on the ground," requiring her to "exercise reasonable care in her journey . . . to the Anacostia Metrorail station," and the question as to whether "the condition of the escalators was open and obvious and known to Ms. Barksdale-Showell as it was to WMATA." *Barksdale-Showell*, *supra*, 965 A.2d at 25. Thus, in answering the second question, we must consider, and the trial court should consider, not only whether Ms. Reeves knew or should have known that the floor was wet, but also whether she knew or should have known the chance of harm and the gravity of the threatened harm due to the wet and slippery floor tiles. *See id.* at 25 ("The Restatement explains . . . that 'obvious' means that 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" (quoting Restatement (Second) of Torts § 343A cmt. b (Am. Law Inst. 1965))).

In addition, there was other evidence regarding WMATA's awareness of the dangerous condition of the wet floors. This evidence indicated that this case could not be resolved as a matter of law at the summary judgment stage of the litigation. Lawrence Walker, a station manager for WMATA from 2004 to 2011, was on duty at the Archives Metro station on February 24, 2011. He was asked during his

deposition, "[W]ere you aware, back in February 2011, that the tiles in the paid area of the mezzanine could become slippery when they were wet?" He replied, "Yes." He was also asked, "[W]ould you agree that if you know that the floor tiles are wet, then you need to put up a warning for the passengers, right?" He responded, "Correct." Furthermore, Dr. Harrison's deposition testimony and his affidavit undermine the trial court's finding as a matter of law that the risk posed by the Archives Metro station's wet floor was obvious to Ms. Reeves and thus that WMATA had no duty to warn Ms. Reeves about that risk. Even if we agree with the trial court that floors, particularly those made of tile, generally pose "an obvious risk" when wet, Ms. Reeves presented evidence that the danger or hazardous risk posed by the particular wet floor at issue here was not equally obvious or foreseeable to both Ms. Reeves and WMATA.[8] *See Barksdale-Showell*, *supra*, 965 A.2d at 25. The risk in this case is more appropriately labeled as one

---

[8] Even assuming that Ms. Reeves knew that the station floor was wet and potentially hazardous, Dr. Harrison's testimony suggests that the risk posed by the wet station floor was particularly great in light of the low coefficient of friction of the floor's surface stemming from many feet wearing smooth the floor's surface over the years. A layperson can reasonably expect a wet tile floor to pose some risk of danger, but it is difficult to conceive that a layperson "exercising ordinary perception, intelligence, and judgment" could understand the extent of the hazard posed by a metro station floor with a coefficient of friction significantly below the minimum coefficient necessary for safety purposes. Moreover, a WMATA station manager, who watches people navigating slippery station floors all year long, necessarily has a much better understanding of how likely people are to slip on a slippery floor.

"peculiarly foreseeable" to WMATA, which owns and operates all metro stations and which thus was in a better position to know just how worn down and slippery the floors in those stations are.[9] *See id.* (finding that Ms. Barksdale-Showell was not in a position equal to WMATA when it came to gauging the risk posed by a wet WMATA escalator and that "[h]er appreciation of the condition (the wet ground) was different than and distinct from her lack of appreciation of the unreasonably dangerous hazard risk that the condition posed on the escalator").

Third, Ms. Reeves' deposition testimony and affidavits constitute evidence that WMATA had notice that the Archives Metro station's floor was wet on the day of the incident. WMATA does not dispute Ms. Reeves' sworn statement that it rained from the time she reached her job in the morning until 5:30 p.m. when she left work to go home. Ms. Reeves further stated in her affidavit that the water on the floor "formed trails or lines that looked like it had been tracked in on peoples' feet." This evidence is sufficient to give rise to the inference that WMATA was on constructive notice of the fact that the Archives Metro station floor was wet, and this evidence is properly viewed at the summary judgment stage as presenting a question of fact for the jury, contrary to the conclusion of the trial court. *See*

---

[9] The reported incident involving one of WMATA's board members falling in a metro station several months before Ms. Reeves' fall is emblematic of WMATA's unique position in this regard.

*Harris*, *supra*, 429 F.2d at 745 ("[E]vidence of a substantial period of rain is sufficient to give a landlord constructive notice of the foreseeable hazards that may result from that rain, including the risk that water will be tracked into an apartment lobby and the floor will become slippery.").

In sum, given the evidence attached to the summary judgment pleadings, including that attached to Ms. Reeves' opposition and her motion for reconsideration, we disagree with the trial court's statement that "the court cannot conclude that the water tracked into a metro station by its patrons . . . on a rainy day during rush hour constitutes a hidden or otherwise discrete danger that was well known to only the [WMATA], and not [Ms. Reeves]."[10]   Dr. Harrison's

---

[10]   WMATA argues in the alternative that summary judgment was appropriate because the undisputed facts show that even if it had a duty to warn Ms. Reeves of the wet floor condition, that condition was not the proximate cause of her fall. The proper question is whether WMATA's failure to warn proximately caused Ms. Reeves' fall. On this record, we cannot agree that a jury would need to speculate regarding causation, as WMATA contends. This case is distinguishable from *Wilson v. Washington Metro. Area Transit Auth.*, on which WMATA relies. There, unlike Ms. Reeves in this case, plaintiff presented a "bare statement . . . that she slipped and fell, and noticed dry sticky soda on her hand after the fall." 912 A.2d 1186, 1189 (D.C. 2006). This case is more like *Barksdale-Showell*, where "the jury heard Ms. Barksdale-Showell's testimony that there were no warnings of any kind and could reasonably infer that Ms. Barksdale-Showell, who had not encountered any problem during any other point in her walk from her home to the bus stop, exiting the bus, walking into the Metrorail station, and onto the escalator, was subjected to an unreasonably dangerous condition." 965 A.2d at 25-26.

(continued…)

testimony leaves open the possibility that there *was* such a hidden danger that was well known to WMATA but not to Ms. Reeves, and Ms. Reeves' testimony and sworn statements further suggest that the condition existed for a sufficient length of time to put WMATA on constructive notice of the existence of the condition, giving WMATA an opportunity to warn Ms. Reeves of the danger. Viewing the evidence in the light most favorable to the Ms. Reeves, therefore, leads to the conclusion that WMATA may in fact have had a duty to warn Ms. Reeves of the hazard. Thus, since Ms. Reeves' testimony and affidavit further suggest that WMATA failed to warn her about the wet floor, and also that WMATA's failure to warn proximately caused her fall, *see supra* note 10, the trial court erred in granting summary judgment to WMATA; a genuine issue of material fact existed and the case should have proceeded to trial.

Accordingly, for the foregoing reasons, we vacate the orders of the trial court and remand this case for further proceedings.

*So ordered.*

---

(…continued)

Under these circumstances, we held that "a reasonable juror could find in [Ms. Barksdale-Showell's] favor on causation." *Id*. at 26.