Sherreal ABDULWALI, Appellee,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Appellant.

No. 01–7165.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 7, 2002.

Decided Jan. 14, 2003.

Bruce P. Heppen, Associate General Counsel, Washington Metropolitan Area Transit Authority, argued the cause for appellant. With him on the briefs were Cheryl C. Burke, General Counsel, Robert J. Kniaz, Deputy General Counsel, and Gerard J. Stief, Frederic H. Schuster, and Mark F. Sullivan, Associates General Counsel.

Stephan H. Peskin argued the cause and filed the brief for appellee.

Before: RANDOLPH and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The issues are whether this appeal is timely and, if so, whether sovereign immunity shields the Washington Metro Area Transit Authority from liability for the design of warning signs on Metro trains.

On February 5, 1999, six-year-old Tyri Brooks Hammond and his mother, Sherreal Abdulwali, were on the platform in the U Street–Cardozo Metrorail station, preparing to board a Metro train. Tyri boarded, but the doors closed before his mother could get on, and the train pulled away from the station. Alone, Tyri be-

came upset and called to his mother, who was running alongside the train, yelling for help. When the train did not stop, Abdulwali immediately reported the situation to the station manager.

As the train left the station and proceeded into a tunnel, Tyri moved to the rear of the car and exited through the bulkhead doors, attempting to pass into the next car. The train passed over a switching device causing a large gap between the two cars. Tyri fell through this gap and onto the tracks.

When Abdulwali and the station manager heard cries coming from the tunnel, they notified Transit Authority officials, who hurried to Tyri. They found him severely injured, but still conscious, seventy feet into the tunnel. Four days later, despite efforts to save him at Children's Hospital, Tyri died from his injuries.

Abdulwali sued the Transit Authority, alleging that its negligence in various respects caused the death of her son. Among her claims was an allegation that the Transit Authority failed to warn passengers adequately of the dangers of traveling between cars on a moving train.

The only warning in a Metro car was a sign on each bulkhead door that read "No Passage—Except in Emergency." The size, location, and language of these signs were prescribed in the Transit Authority's contract for the purchase of Metro trains. WMATA Rapid Rail Transit Car Contract 2Z0065, Conformed Technical Specification dated June 15, 1979 at § S5.01 INTERIOR SIGNS, (c) Miscellaneous Signs.

The Transit Authority, invoking the defense of sovereign immunity, moved to dismiss, or in the alternative for summary judgment. The district court granted the Transit Authority's summary judgment motion on all counts except with respect to the failure to warn claim. *Abdulwali v. WMATA,* Civ. No. 99–01905, slip op. at 12, 13 (D.D.C. Nov. 28, 2000). On that count, the court rejected the immunity defense, explaining that although the Transit Authority had provided specifications for the bulkhead signs in its contract for the purchase of Metro cars, those specifications did not prohibit the Transit Authority from furnishing cars with additional signs or otherwise providing increased warning of the danger of passing between cars on a moving train. *Id.* at 12. The court issued a "Memorandum Opinion and Order" but did not set forth the judgment on a separate document. On December 15, 2000, the Transit Authority filed a "Motion for Reconsideration and Clarification of the November 28, 2000 Order," which the district court denied in a single-page order dated September 6, 2001. The Transit Authority now appeals both the November 28 order denying its defense of immunity and the September 6 order denying reconsideration.

■ The first issue is whether the Transit Authority's appeal of the November 28 order is timely. A notice of appeal must be "filed ... within 30 days after the judgment ... appealed from is entered." FED. R.APP. P. 4(a)(1)(A). A judgment is considered "entered for purposes of [FED. R.APP. P.] 4(a) when it is entered in compliance with Rule[ ] 58 ... of the Federal Rules of Civil Procedure." FED. R.APP. P. 4(a)(7) (1999).[1] We have held that "the clock on a party's right to appeal" does not start to run until the district court "enter[s] a judgment that complies with Rule 58." *United States v. Feuver,* 236 F.3d 725, 727 (D.C.Cir.2001).

---

1. On December 1, 2002, FED. R.APP. P. 4(a)(7) was amended to provide that a judgment is considered entered for appellate purposes after either the judgment has been set forth on a separate document or 150 days have run from entry of the judgment in the civil docket.

Rule 58 requires that "every judgment ... be set forth on a separate document." FED R. CIV. P. 58. A "judgment" is "a decree and any order from which an appeal lies," FED R. CIV. P. 54(a), and encompasses interlocutory orders from which an appeal lies. *See McCowan v. Sears, Roebuck & Co.,* 908 F.2d 1099, 1103 (2d Cir. 1990); *see also* 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2651, at 8 (1998). Since a court's denial of an immunity defense is immediately appealable, *see KiSKA Constr. Corp. v. WMATA,* 167 F.3d 608, 610–11 (D.C.Cir. 1999), the district court's November 28 order constituted a "judgment," and the court was required to set forth that judgment on a separate document for entry by the clerk of the court. *See Derrington–Bey v. District of Columbia Dep't of Corr.,* 39 F.3d 1224, 1225 (D.C.Cir.1994). The court's failure to do so means that the Transit Authority's allotted time for filing an appeal never began to run, much less expire. The Transit Authority's appeal is therefore timely. *See United States v. Haynes,* 158 F.3d 1327, 1330–31 (D.C.Cir. 1998).

■ This leaves the question of immunity. The Transit Authority was created when Congress approved the Washington Metropolitan Area Transit Authority Compact signed by Maryland, Virginia, and the District of Columbia. *See* Pub.L. No. 89–774, 80 Stat. 1324 (1966) (codified as amended at D.C.CODE ANN. § 9–1107.01 *et seq.*). The Compact confers upon the Transit Authority the sovereign immunity enjoyed by the signatories. *See Beebe v. WMATA,* 129 F.3d 1283, 1287 (D.C.Cir. 1997). That immunity has been waived for "torts ... committed in the conduct of any proprietary function," but preserved for "torts occurring in the performance of a governmental function." D.C.CODE ANN. § 9–1107.01(80).

We have applied a two-part test to determine whether a particular activity is governmental or proprietary. *See Burkhart v. WMATA,* 112 F.3d 1207, 1216 (D.C.Cir.1997). We first ask whether the activity at issue is "quintessentially governmental," such as the "operation of a police force." *Dant v. District of Columbia,* 829 F.2d 69, 74 (D.C.Cir.1987). If so, the activity falls within the scope of the Transit Authority's immunity. When the activity is not quintessentially governmental, the relevant inquiry is whether the Transit Authority's actions were "discretionary." Discretionary activities are "governmental," and thus are protected by sovereign immunity. *See Burkhart,* 112 F.3d at 1216. Since both parties agree, as do we, that the Transit Authority's decisions concerning the design and placement of warning signs in Metro cars are not a quintessentially governmental function, our analysis focuses on whether the Transit Authority's decisions constituted discretionary functions.

Discretionary functions are those governmental actions and decisions, "based on considerations of public policy" and requiring "an element of judgment or choice." *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988). If any " 'statute, regulation, or policy specifically prescribes a course of action' " for the Transit Authority to follow, then no discretion is involved, since the Transit Authority has "no rightful option but to adhere to the directive." *United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). In the absence of a prescribed course of action, the Transit Authority's decisions are discretionary if they involve "political, social, [or] economic" choices. *Burkhart,* 112 F.3d at 1217.

Here, the Compact does not prescribe any design specifications for Metro cars,

leaving the Transit Authority with broad discretion to design all transit facilities and to enter into contracts for their operation and furnishment. D.C.CODE ANN. §§ 9–1107.01(12)(f), 13(a). As a result, the Transit Authority was required to make choices, and we must scrutinize these choices to determine if they were discretionary.

Application of the discretionary function test in other contexts has generated a morass of conflicting cases. *See, e.g., Shansky v. United States,* 164 F.3d 688, 693 (1st Cir.1999) (collecting cases). But one constant in our precedents is that the Transit Authority makes discretionary choices when "establishing 'plans, specifications or schedules'" regarding the Metro system. *Beatty v. WMATA,* 860 F.2d 1117, 1127 (D.C.Cir.1988).[2] We have drawn a distinction between complaints alleging negligent design, which the Transit Authority's immunity bars, and those alleging negligent maintenance, to which the Transit Authority's immunity does not apply. *Dant,* 829 F.2d at 74.

Here, plaintiff has not alleged that the Transit Authority negligently maintained the signs; she has challenged only the adequacy of the signs' warning. The complaint is aimed at the design of the signs as specified in the Transit Car Contract. Sovereign immunity therefore bars her claim. Holding otherwise would foster "judicial 'second-guessing'" of "political, social, and economic" decisions that the Transit Authority's immunity was designed to prevent. *Sanders v. WMATA,* 819 F.2d 1151, 1155, 1156 (D.C.Cir.1987) (quoting *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984)).

The decision in *Cope v. Scott,* 45 F.3d 445 (D.C.Cir.1995), does not alter our con-clusion. *Cope* held that the National Park Service's decision not to post warning signs at a dangerous curve on a slippery road was not discretionary, and therefore sovereign immunity did not bar a suit against the Park Service for negligence. The Park Service's decisions whether to post signs were governed by engineering standards rather than its policy judgment; its decisions thus were not discretionary functions. *See Sloan v. Dep't of Hous. & Urban Dev.,* 236 F.3d 756, 764 n. 6 (D.C.Cir.2001). This case is different. Designing the bulkhead signs, or any feature of the Metro system, required judgments that were by their nature susceptible to a policy analysis. *See Dant,* 829 F.2d at 74. The Transit Authority doubtless considered matters such as safety, aesthetics, cost, and a desire to alert passengers to the danger of moving between cars without discouraging them from so moving during emergencies. Judicial review "in such decisionmaking through private tort suits would require the courts to 'second guess'" the Transit Authority's policy judgments. *See Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2768. Accordingly, the sign specifications fall within the scope of a discretionary function, and sovereign immunity barred the failure to warn claim. *See Burkhart,* 112 F.3d at 1217.

The district court's denial of the Transit Authority's immunity defense is reversed. The appeal of the motion to reconsider is moot.

*So ordered.*

---

**2.** *See also Burkhart,* 112 F.3d at 1216–17; *Souders v. WMATA,* 48 F.3d 546, 549 (D.C.Cir.1995); *Dant,* 829 F.2d at 74.