*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-455

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, APPELLANT,

V.

ALBERT NASH-FLEGLER, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2018-CAB-007644)

(Hon. Kelly A. Higashi, Trial Judge)

(Submitted September 24, 2021                    Decided April 14, 2022)

*Nimalan Amirthalingam*, *Andrew Butz*, and *Neal M. Janey, Jr.* were on the brief for appellant.

*Justin Beall* was on the brief for appellee.

Before BECKWITH and DEAHL, *Associate Judges*, and WASHINGTON, *Senior Judge*.

DEAHL, *Associate Judge*: Albert Nash-Flegler was deboarding a Metro train in the District when he slipped and fell on the platform. He sued the Washington Metro Transit Authority (WMATA) alleging that he was injured due to its negligent maintenance of its platform and its failure to properly warn passengers of the

platform's icy and slippery condition. WMATA moved for summary judgment arguing, among other things, that sovereign immunity insulated it from suit. The trial court granted summary judgment on the negligent maintenance claim, but denied summary judgment on the failure-to-warn claim, concluding that sovereign immunity did not bar that claim from proceeding to trial.

WMATA now challenges the trial court's denial of its sovereign immunity defense to Nash-Flegler's failure-to-warn claim in this interlocutory appeal. WMATA first argues that the denial of sovereign immunity is an immediately appealable order under the collateral order doctrine. That is an issue of first impression for this court, and we agree with WMATA that the rejection of its sovereign immunity defense is an appealable interlocutory order. *See Abdulwali v. WMATA*, 315 F.3d 302, 305 (D.C. Cir. 2003); *KiSKA Constr. Corp. v. WMATA*, 167 F.3d 608, 610-11 (D.C. Cir. 1999). WMATA next argues that sovereign immunity precluded Nash-Flegler's suit from proceeding, because his failure-to-warn claim challenged a discretionary decision that was "susceptible to policy judgment," bringing it within sovereign immunity's protections. We disagree and affirm the trial court's denial of summary judgment on the failure-to-warn claim.

**I.**

Albert Nash-Flegler exited a train at WMATA's Deanwood station late one December night. He immediately slipped and fell on ice that had accumulated on the platform. Although WMATA had placed one yellow warning cone on the platform near the escalator, Nash-Flegler did not see it prior to his fall. Nash-Flegler sued WMATA, claiming he was injured due to WMATA's negligent failure to: (1) maintain the platform by keeping it free of ice, and (2) properly warn passengers of slippery conditions on the platform. WMATA moved for summary judgment on both claims, which the trial court granted as to the negligent maintenance claim, a ruling that is not challenged on appeal. The trial court denied summary judgment on the failure-to-warn claim, and WMATA appeals that ruling.

The trial court rejected WMATA's argument that it was entitled to sovereign immunity from the failure-to-warn claim. The court reasoned that WMATA had a duty to warn Nash-Flegler of slippery conditions on its platforms when those conditions were "not as open and obvious" to him as they were to WMATA. It rejected WMATA's argument that it was insulated from the suit challenging its employee's decision to place a solitary yellow cone in the midst of a long Metro platform. In the court's view, although sovereign immunity might protect WMATA

from a suit challenging the adequacy of warnings that are actually provided, this suit alleged an outright failure to provide any warnings because it was unclear whether passengers could even "see the yellow warning cone on the station platform when they exited the train." For that reason, the court likened this case to one in which we held that sovereign immunity did not insulate WMATA from a failure-to-warn suit where WMATA provided no warnings and "did not provide a policy rationale for its decision not to warn." *WMATA v. Barksdale-Showell*, 965 A.2d 16, 22 n.4 (D.C. 2009). On the same grounds, the court found this case unlike *Abdulwali*, in which the D.C. Circuit held that WMATA had sovereign immunity from a suit that challenged not an outright failure to warn but "the design of [warning] signs" and "the adequacy of the signs' warning." 315 F.3d at 305.

WMATA moved for reconsideration, asserting several potential policy rationales that might have conceivably informed its agent's decision to place a single cone on the Metro platform, including a desire to avoid tripping hazards and passenger bottlenecks. WMATA did not assert that those rationales in fact informed its agent's decision to place a single cone on the platform, but instead argued that the decision about where to place the cone was "the type of decision that implicates economic and policy judgment," which in its view is sufficient to trigger sovereign immunity's protections. The trial court disagreed, reasoning "that an issue of fact

remains over whether [Nash-Flegler] could see the warning cone before he fell" and that, if he could not, WMATA was not immunized from the failure-to-warn claim. The court further noted that "WMATA's policy arguments regarding the placement of cones were raised only in its Motion to Reconsider and are not supported anywhere in the record."

WMATA appealed the trial court's denial of summary judgment and its denial of the motion for reconsideration. After WMATA noted its appeal, this court sua sponte ordered the parties to address whether the trial court's denial of sovereign immunity was an appealable order under the collateral order doctrine.

## II.

We first must address the threshold question of whether we have jurisdiction to entertain this appeal from an interlocutory order denying WMATA's claim to immunity. Because we conclude that the order is appealable, we then address WMATA's challenge to the trial court's denial of sovereign immunity.

**A.**

This court's jurisdiction typically derives from its authority to review "all final orders and judgments of the Superior Court." *See* D.C. Code § 11-721(a)(1) (2012 Repl.); *see also* § 11-721(a)(2) (conferring jurisdiction over certain "interlocutory orders" not at issue here). A final order is one "that resolves the case on its merits" and leaves nothing for the court to do but "execute the judgment." *McNair Builders, Inc. v. Taylor*, 3 A.3d 1132, 1135 (D.C. 2010). A denial of a motion for summary judgment, like the one now before us, is not a final order because it contemplates a continuation of proceedings. *Id.* Such an order may nonetheless be immediately appealable under the collateral order doctrine if it has "a final and irreparable effect on important rights of the parties." *Id.* (quoting *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 339 (D.C. 2001)) (internal quotation marks omitted).

WMATA argues that the trial court's denial of sovereign immunity is appealable under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-57 (1949). This threshold issue appears to be one of first impression for this court. For the collateral order doctrine to apply, so that a non-final order is nonetheless appealable, the order being challenged must satisfy three

requirements: "(1) it must conclusively determine a disputed question of law, (2) it must resolve an important issue that is separate from the merits of the case, and (3) it must be effectively unreviewable on appeal from a final judgment." *McNair Builders*, 3 A.3d at 1135.

WMATA argues, and Nash-Flegler does not dispute, that the first two criteria are satisfied here. That is, it is undisputed that the denial of sovereign immunity conclusively determined a disputed question of law, and that legal issue is important and separate from the merits of the case. We agree on both points. As to the first criterion, whether sovereign immunity applies is a question of law. *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1168 (D.C. Cir. 1994) ("entitlement to sovereign immunity" raises "matters of law"); *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 860 (D.C. 2009) ("We review a trial court's determination regarding the applicability of sovereign immunity de novo."). The trial court conclusively resolved the question both in its initial order denying summary judgment and in its denial of the motion for reconsideration.[1] As to the second criterion, sovereign

---

[1] While the trial court suggested WMATA might ultimately have immunity from liability if the evidence at trial demonstrated the warning cone was visible to deboarding passengers—and so in that sense its ruling might be seen as inconclusive or non-legal—that does not affect the analysis. The trial court conclusively resolved the legal question of whether sovereign immunity protected WMATA from proceeding to trial at all. That itself is an important question. Sovereign immunity,

immunity is an important question separate from the merits of the case. In *Mitchell v. Forsyth*, the Supreme Court explained that "immunity is in part an entitlement not to be forced to litigate the consequences of official conduct," so that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." 472 U.S. 511, 527-28 (1985). While *Mitchell* concerned a qualified immunity defense, its reasoning applies just as readily to a sovereign immunity defense.

The parties confine their disagreement on this threshold question to the third criterion: whether the trial court's denial of sovereign immunity would be "effectively unreviewable if review is to be left until later." *McNair Builders*, 3 A.3d at 1136 (quoting *Will v. Hallock*, 546 U.S. 345, 353 (2006)). We agree with WMATA that a denial of sovereign immunity is effectively unreviewable if it cannot be reviewed until after trial. To understand why that is, we first note that WMATA's immunity stems from the compact in which Maryland, Virginia, and the District of Columbia created WMATA and conferred their own sovereign immunity upon it.

---

in substantial part, "is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 576 n.2 (7th Cir. 1989). Moreover, as we explain *infra* n.5, we disagree with the trial court that WMATA's entitlement to sovereign immunity hinges on the visibility of the cone to deboarding passengers.

*See Barksdale-Showell*, 965 A.2d at 20; Pub. L. No. 89-774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code §§ 9-1107.01 to -1107.12 (2001)).  That immunity is essentially a statutorily conferred and circumscribed version of Eleventh Amendment immunity that states themselves enjoy.  Like the sovereign immunity of states, WMATA's entitlement to sovereign immunity "is an *immunity from suit* rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (quoting *Mitchell*, 472 U.S. at 526)).  A trial court's denial of a sovereign immunity defense therefore satisfies this third and final prong of the collateral order doctrine.

The United States Court of Appeals for the District of Columbia Circuit has reached the same conclusion.  In *KiSKA*, for instance, the D.C. Circuit held that WMATA's entitlement to immunity was immediately appealable under the collateral order doctrine.  167 F.3d at 610-11 (quoting *Rendall–Speranza v. Nassim*, 107 F.3d 913, 916 (D.C. Cir. 1997)).  Similarly, in *Abdulwali*, the D.C. Circuit concluded that the trial court's denial of WMATA's sovereign immunity defense to a failure-to-warn claim—the very type of claim we confront here—was immediately appealable.  315 F.3d at 304; *cf. Hornstein v. Barry*, 560 A.2d 530, 536 n.15 (D.C. 1989) (en banc) (D.C. Circuit's precedents are particularly persuasive authority

where there is an interest in "harmony between court systems and uniformity of result in the same geographical area").

Nash-Flegler counters that in *Will v. Hallock*, which postdates those D.C. Circuit opinions, the Supreme Court altered the calculus in a manner suggesting this is not an appealable order. *See generally* 546 U.S. 345 (2006). We disagree. In *Will*, the Court explained that "when asking whether an order is 'effectively' unreviewable if review is to be left until later" under the third prong of the collateral order doctrine, "it is not mere avoidance of a trial, but avoidance of a trial that would imperil *a substantial public interest*, that counts." 546 U.S. at 353 (emphasis added). In applying that test, the Court held that the trial court's rejection of a defense under the judgment bar of the Federal Tort Claims Act (FTCA)—which, had it applied, would have barred plaintiff's suit against government agents from proceeding to trial—was not an immediately appealable collateral order.[2] *Id.* at 347. In reaching that conclusion, the court detailed why FTCA's judgment bar is not like a claim to

---

[2] The judgment bar at issue in *Will* protects federal employees from suit where the claimant has brought an action against the United States under FTCA, that action has gone to judgment, and the suit against the employee concerns the same subject matter. 28 U.S.C. § 2676 ("The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.").

sovereign immunity, but is more akin to "the defense of claim preclusion, or res judicata." *Id.* at 354. That is because the judgment bar does not protect anybody from suit absent its "essential procedural element," namely, that it "can be raised only after a case under [FTCA] has been resolved in the government's favor." *Id.* at 354. In short, the judgment bar at issue in *Will* is not designed to, and does not in fact, protect anybody from the burdens of going to trial generally. It protects them only from duplicative litigation where the United States has already succeeded in a prior action about the same subject matter. For that reason, it could not be said to advance "a substantial public interest" in avoiding trial altogether. *Id.* at 353-55.

Nash-Flegler also relies on this court's opinion in *McNair Builders*, in which we held that the trial court's rejection of a private party's claim to the judicial proceedings privilege was not immediately appealable. 3 A.3d at 1142. The judicial proceedings privilege protects litigants and their attorneys from "actions in defamation for communications" made in the course of "judicial proceedings." *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1989). But just as the Supreme Court did in *Will*, our court took pains to explain why the judicial proceedings privilege "does not protect a substantial public interest of [a] 'high order,'" *McNair Builders*, 3 A.3d at 1138, and we further highlighted sovereign immunity as a doctrine that does protect such high-order public interests. *Id.* at 1139 (explaining that the judicial

proceedings privilege does "not compare with the public interests" of "preserving the ability of officials to carry out their public duties" and "ensuring the sovereign rights of states"); *id.* at 1141 & n.11. *McNair Builders* thus lends support to WMATA's view that this is an appealable collateral order, not to Nash-Flegler's contrary view.

Finally, Nash-Flegler argues that it is the limited nature of WMATA's sovereign immunity that renders its interests in avoiding litigation insubstantial for purposes of the collateral order doctrine's third prong. He stresses that WMATA's sovereign immunity is not an absolute bar to suit, but applies only when WMATA's actions are in the performance of a governmental function. *See* D.C. Code § 9-1107.01(80) (conferring immunity "for any torts occurring in the performance of a governmental function"); *see also infra* Part II.B. It is true enough that there are limitations on WMATA's sovereign immunity, but the same is true of the sovereign immunity enjoyed by the District itself. *See Wade v. District of Columbia*, 310 A.2d 857, 860 (D.C. 1973) (en banc) ("[T]he District is immune from suit only if the act complained of was committed in the exercise of a discretionary function; if committed in the exercise of a ministerial function the District must respond."); *see also WMATA v. O'Neill*, 633 A.2d 834, 838 & n.8 (D.C. 1993). Those limits on the reach of sovereign immunity do not render the interests protected by it any less

substantial in cases to which it does extend. Because those interests can only be effectively vindicated via interlocutory appeal, prior to any trial, we hold the denial of WMATA's sovereign immunity defense is an immediately appealable order.

**B.**

We now turn to the question of whether the trial court erred in denying WMATA's sovereign immunity defense. That is a legal question we review de novo, *Aguehounde v. District of Columbia*, 666 A.2d 443, 447 (D.C. 1995), though it "may turn on factual determinations that are made by the trial court," to which we owe deference, *J.C. v. District of Columbia*, 199 A.3d 192, 206 (D.C. 2018) (remanding grant of sovereign immunity for further factual findings regarding "the extent to which each specific action alleged was or was not driven by a District policy").

Under section 80 of the compact establishing WMATA and conferring immunity upon it, WMATA's immunity extends to acts "occurring in the performance of a governmental function," but does not protect it from suits for "torts . . . committed in the conduct of any proprietary function." D.C. Code § 9-1107.01(80). Our precedents have since interpreted that statutory test to be the same "two-part test" that federal courts apply when interpreting the "discretionary

function" exception to the Federal Tort Claims Act. *Barksdale-Showell*, 965 A.2d at 20 (citing *McKethean v. WMATA*, 588 A.2d 708, 713 (D.C. 1991)). In applying that test, we first ask whether the lawsuit targets a "quintessentially governmental activity"; if it does, immunity applies. *Id.* We need not dwell on this first question as WMATA does not contend that it was performing a quintessential governmental function here, nor do we think that it was. Our analysis instead focuses on the second part of the test.

Under this second part, we ask whether WMATA was engaged in a "discretionary function" that "involve[d] balancing various economic, political, and social considerations."[3] *Aguehounde*, 666 A.2d at 448. Immunity extends to those discretionary acts to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984); *see also Wade*, 310 A.2d at 860 (explaining distinction between

---

[3] We often contrast discretionary functions with "ministerial" acts in which a "statute, regulation, or policy specifically prescribes a course of action" so that there is "'no rightful option but to adhere to the directive.'" *Barksdale-Showell*, 965 A.2d at 21 (quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). But, importantly, not every non-ministerial act is a discretionary act protected by sovereign immunity. "Only discretionary actions 'grounded in social, economic, and political policy'" are protected. *Usoyan v. Republic of Turkey*, 6 F.4th 31, 45 (D.C. Cir. 2021) (quoting *Gaubert*, 499 U.S. at 323)).

discretionary and ministerial acts). Discretionary activity "is not confined to the policy or planning level," and can include day-to-day operational activities, provided the decisions at issue "involved an exercise of 'political, social, or economic judgment.'" *Burkhart v. WMATA*, 112 F.3d 1207, 1216-17 (D.C. Cir. 1997) (quoting *Gaubert*, 499 U.S. at 323).

In this case, the trial court correctly observed that the record is devoid of any political, social, or economic judgments that informed the WMATA employee's decision to place only a single cone on the Metro platform. WMATA contends that is immaterial, so long as it can articulate some plausible policy considerations that might have informed the decision about how or whether to warn deboarding passengers about the platform's conditions. WMATA manages to do that, as it asserts that it may have chosen to limit the number of warnings to increase their impact, and therefore efficacy; or that its decision to place but a single cone on the Metro platform could have been animated by concerns about passenger panic and bottlenecking had the warnings been more prevalent. What matters, in WMATA's view, is whether its actions were "susceptible to policy judgment," *KiSKA*, 321 F.3d at 1159, not whether there was an actual policy judgment made.

That paints with too broad a brush. "[N]early every government action is, at least to some extent, subject to 'policy analysis,'" and a decision is not protected by sovereign immunity simply because it involves "the faintest hint of policy concerns." *Cope v. Scott*, 45 F.3d 445, 448-49 (D.C. Cir. 1995); *Usoyan v. Republic of Turk.*, 6 F.4th 31, 45 (D.C. Cir. 2021) (same). When there is no evidence that a decision was in fact animated by policy concerns, at least, sovereign immunity will apply only if the "nature" of the decision itself is "fraught . . . with public policy considerations." *Cope*, 45 F.3d at 450; *Usoyan*, 6 F.4th at 47. "The mere presence of choice . . . does not trigger" sovereign immunity. *Cope*, 45 F.3d at 449. Immunity extends only "where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency." *Id.* at 450 (internal quotation marks omitted); *Usoyan*, 6 F.4th at 45.

The decision to place a single warning cone on the Metro platform—as opposed to, say, many cones, or broadcasting a warning message to deboarding passengers—is not a decision that by its nature is so fraught with policy considerations as to bring it within sovereign immunity's protections. This case is in stark contrast to *Abdulwali*, on which WMATA places considerable reliance, in that respect. In *Abdulwali*, the plaintiff alleged that WMATA had not provided adequate warnings about the dangers of passing between Metro cars when it posted

"on each bulkhead door" signs "that read 'No Passage—Except in Emergency.'" 315 F.3d at 303. The D.C. Circuit held that WMATA was protected by sovereign immunity because the plaintiff's suit was "aimed at the design of the signs as specified in the Transit Car Contract" that WMATA had entered into when providing the technical specifications of those signs. *Id.* at 305. The court reasoned that the design of those warning signs "required judgments that were by their nature susceptible to policy analysis" and that WMATA "makes discretionary choices when establishing plans, specifications or schedules regarding the Metro system." *Id*. (internal quotation marks omitted).

The same is not true of a single WMATA employee's seemingly random decision (for all the evidence reveals) about whether and where to place warning cones. It is a strain to conceive of that decision as an example of system planning. Each failure-to-warn case on which WMATA relies involves relatively high-level, policy-laden decisions that bear little resemblance to the challenged decision about cone placement. *See Dant v. District of Columbia*, 829 F.2d 69, 74-75 (D.C. Cir. 1987) (holding that the complex design of its system-wide fare collection apparatus is "approved by WMATA in the exercise of its policy discretion."); *Wainwright v. WMATA*, 903 F. Supp. 133, 138 (D.D.C. 1995) (noting that "[a]nalogous matters, like whether to install traffic lights or roadway markings, have been deemed

discretionary as well" and finding that WMATA was immune from suit for its failure to post presumably permanent warnings about the dangers of escalator comb plates); *Minns v. United States*, 155 F.3d 445, 452 (4th Cir. 1998) (holding that "the decision whether to warn soldiers and their families of the potential effects of inoculations and pesticides" was a "judgment call" that implicates other military considerations like cohesion, and therefore "falls . . . at the core of the discretionary function exception."); *Shuman v. United States*, 765 F.2d 283, 291 (1st Cir. 1985) (finding that a decision not to warn contractors of asbestos hazards fell within the discretionary function exception); *Ford v. Am. Motors Corp.*, 770 F.2d 465, 467 (5th Cir. 1985) (finding that the Postal Service's decision to sell used jeeps without warning of their rollover risks was a discretionary act).[4]

This case presents a far weaker claim to immunity than other cases in which immunity has been denied. Consider *Cope*, in which the D.C. Circuit held that "the discretion regarding where and what type of signs to post [along a slippery stretch of road in Rock Creek Park] is not the kind of discretion[ary]" decision entitled to immunity. 45 F.3d at 451. *Cope* held that the location of those traffic signs was

---

[4] The challenged decision here is similarly distinguishable from the hiring, supervision, and training decisions immunized in *Burkhart*, 112 F.3d at 1217. Personnel decisions are inherently more likely to require economic and policy considerations than the placement of temporary warning cones.

fundamentally rooted in "engineering and aesthetic considerations" and therefore was insufficiently "fraught with public policy considerations" to be immunized. *Id.* at 451-52. *Cope* makes clear that decisions about where to post warnings—even those that are permanently in place (unlike the cone here)—are not necessarily immune from tort suits.

This court relied on *Cope* in *Barksdale-Showell*, a case concerning WMATA's failure to provide any warning about a wet and icy escalator. The conceivable policy rationales that WMATA now articulates would have been applicable there as well—concerns about diluting the efficacy of warnings, passenger bottlenecking, tripping hazards, etc. We nonetheless held that "WMATA's lack of a policy underlying its decision not to warn . . . is certainly not the kind of 'social, economic, or political' decision that Congress intended to immunize from suit." 965 A.2d at 22 n.4. The same is true here. WMATA persists that we should not rely on *Barksdale-Showell* because the sovereign immunity analysis in that case was conducted sua sponte after WMATA failed to raise a sovereign immunity defense at trial or on appeal. *Id*. We disagree. Because sovereign immunity presents a jurisdictional question, we were obliged to address it in *Barksdale-Showell*, it was necessary to our disposition, and our analysis on the point is therefore binding precedent. *Parker v. K & L Gates, LLP*, 76 A.3d 859, 873

(D.C. 2013) (Ferren, J., concurring for a majority of the court) ("binding precedent" includes "legal steps or conclusions" that "are 'necessary' to explain the outcome"). Just as in *Barksdale-Showell*, the record here is devoid of any evidence of policy considerations underlying the decision about whether and where to place warning cones, and that decision is not so inherently fraught with policy considerations that by its very nature it is immunized. *See* 965 A.2d at 21 n.4.[5]

## III.

The judgment of the Superior Court is affirmed.

*So ordered.*

---

[5] Contrary to the trial court's reasoning, the sovereign immunity analysis does not turn on the single cone's visibility to Nash-Flegler or other passengers. Sovereign immunity can shield (and fail to shield) WMATA both from claims that it failed to provide any warnings, and claims that it provided some ultimately inadequate warnings. *See, e.g.*, *Wainwright v. WMATA*, 903 F. Supp. 133, 135 (D.D.C. 1995) (granting WMATA's motion for summary judgment on sovereign immunity grounds as to an outright failure to warn). In either case, one critical question is whether the decision about how to warn, if at all, involved the exercise of "political, social, [or] economic judgment." *Gaubert*, 499 U.S. at 325.